**VAUGHAN v. TEXAS BRANCHES,**
Inc., et al.
No. 9194.

Circuit Court of Appeals, Fifth Circuit.
June 13, 1940.

Oliver J. Todd, Beaumont, Tex., for appellant.

Chas. D. Smith, of Beaumont, Tex., and Leonard B. Levy, of New Orleans, La., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, hereafter referred to as plaintiff, brought this suit to recover damages for breach of contract. The issues presented for decision may best be described by reviewing the material facts.

The Vaughan Hotel in Port Arthur, Texas, was built and owned by Vaughan Hotel Corporation, of which plaintiff was the principal stockholder. In 1928 Canal Bank & Trust Co. of New Orleans, now insolvent, of which defendants, Thompson and Finke are liquidators, acquired certain

bonds of the hotel company. In 1931 the bonds defaulted and the hotel company deeded the property to Texas Branches, Inc., a subsidiary controlled by the Bank. Plaintiff had been active in the management of the hotel. Vaughan Hotel Corporation was given a three years lease of the property, with an option to repurchase it. Plaintiff continued in active management. At the end of three years, December 1934, there were arrearages of rent. The lease was not renewed but plaintiff was permitted to remain in charge of the hotel until further disposition should be made of it.

Plaintiff tried to reorganize the hotel so that it might continue to operate. After several vain attempts he succeeded in interesting J. H. Seekamp, an experienced hotel man, through an advertisement he inserted in the Texas Hotel News. By letters and personal interviews he made a number of proposals to defendants for leasing the hotel to himself and undisclosed associates but none of them was final and in each instance he asked for further time to complete them. His tentative negotiations were usually with Lynch, defendant, who was building manager of the bank. On September 23, 1935, Vaughan wrote a letter to Texas Branches, Inc., in which he said, "I again tender you my acceptance of your offer to lease to me and my associates the property known as the Vaughan Hotel."

In answer to this he was advised by a letter of September 24, 1935, signed Texas Branches, Inc., by Lynch, that the offer could not be accepted as Texas Branches, Inc., had decided to operate the hotel itself as previously advised. On August 28, 1935, plaintiff had been advised by a letter, signed Texas Branches, Inc., by T. H. Lynch, that, after careful consideration, that corporation had decided to take over the operation of the hotel and requested plaintiff to turn the hotel over to it on or before September 30, 1935. By another letter plaintiff was told he would be permitted to occupy his suite in the hotel until October 31, 1935.

The contention of plaintiff is that he was employed as a broker to find a tenant for the hotel on the following terms. The tenant to guarantee the payment of taxes and insurance at all events and, after payment of these charges and operating expenses, the net profits to be divided equally between the tenant and the Texas Branches, Inc. That he secured such a tenant in the person of Seekamp who was able and willing to give the necessary guarantees and furnish references as to his ability to successfully manage the property. And that by refusing to accept the tenant defendants breached the contract. Plaintiff fixed his damages for breach of contract at $143,431.10, estimating that the hotel over a period of ten years, the minimum term of the lease he was authorized to negotiate, would average $71,712.50 annual net profits and under his agreement with Seekamp he was to receive 40 per cent of one half of the net profits, which would aggregate the amount sued for. In the alternative, plaintiff prayed for judgment in the same amount on a quantum meruit.

The trial court required plaintiff to first prove his contract and its breach before offering any evidence as to the measure of damages. When plaintiff rested on that branch of the case, defendant moved for a directed verdict on the ground that the contract as alleged had not been proven, which motion was granted. Error is assigned to the action of the court in declining to hear evidence on the question of the amount of damages and to the direction of the verdict.

The order in which evidence may be introduced in a case is within the sound discretion of the trial judge. First Unitarian Society of Chicago v. Faulkner, 91 U.S. 415, 23 L.Ed. 283. When the trial court was satisfied that no contract had been proven it would have been a waste of the time of the court and the litigants to proceed further with the case. Oscanyan v. Arms Co., 103 U.S. 261, 26 L.Ed. 539; Best v. Dist. of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882.

Seekamp's testimony is to the effect that he was able and willing to lease the hotel, for a term of ten years or longer, on the conditions named, and pay plaintiff 5 per cent of his 50 per cent of the net profits for his services. This would tend to prove that he had secured a tenant, if he had been employed as a broker. However, from plaintiff's testimony it appears he did not advise defendants that he had secured Seekamp as a tenant until after the letter of August 28th, advising him that Texas Branches, Inc. had decided to take over and run the hotel itself.

538

It also appears from his testimony he was endeavoring to organize a corporation of which Seekamp would have 50 per cent of the stock, he would have 40 per cent of the stock and the other 10 per cent would be distributed to local people, not named.

It is clearly shown by the testimony and exhibits of plaintiff that his whole endeavor was to secure the lease for himself and his associates, whose names were undisclosed to defendants. This is entirely incompatible with the theory that he had been employed as a broker to secure a tenant for the hotel. There is no doubt whatever that plaintiff at all times occupied the position of a principal in dealing with defendants and was never their agent. It is also clear that he performed no services for defendants that would entitle him to be paid on a quantum meruit. Reasonable men could not have reached different conclusions on the testimony before the court. Had a verdict been rendered for plaintiff, the judge, in the exercise of sound judicial discretion would have been obliged to set it aside. The district court was right in directing a verdict.

The record presents no reversible error.

The judgment is affirmed.